# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF 89A GILL STREET AUBURN MAINE 04210 AND THE PERSON OF TOUCH SVAY | Case No. 2:25-mj-0086-KFW |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT**

I, Jason Leadbetter, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI) and have been in this position since January 2024. I am also a Portland Police Department Detective and have been a police officer since August 2010. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(c). I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. During my time in law enforcement, I have participated in numerous investigations relating to the distribution of controlled substances, including cocaine, cocaine base, heroin, fentanyl, methamphetamine, diverted pharmaceuticals, and other substances in violation of the federal anti-drug laws, including Title 21, United States Code, Sections 841 and 846. I have conducted or participated in, among other things, surveillance, the execution of search and arrest warrants, debriefings of informants and confidential sources, and reviews of recorded conversations relating to narcotics trafficking. I am familiar with the habits, methods, routines, practices, and procedures commonly employed by persons engaged in the trafficking of illegal drugs, including the use of the internet, internet platforms, applications, and cellular telephones to facilitate those activities. The facts in

this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to provide the facts necessary for a determination of probable cause for the requested search warrant.

2. I have probable cause to believe contraband and evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841, 846 (possession with intent to distribute controlled substances and conspiracy) are located within 89A Gill Street, Auburn, Maine 04210-6611 ("SUBJECT PREMISES") and on the person of Touch Svay ("SVAY"). I submit this application and affidavit in support of a search warrant authorizing a search of the SUBJECT PREMISES and the person of SVAY, as further described in Attachments A-1 and A-2, respectively, incorporated herein by reference, and to seize evidence, fruits, and instrumentalities of the foregoing criminal violations, as more fully described in Attachments B-1 and B-2, which are also incorporated herein by reference.

3. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

### IDENTIFICATION OF THE LOCATION TO BE SEARCHED

4. The property to be searched is the residence/apartment located at 89A Gill Street, Auburn, ME 04210-6611. The SUBJECT PREMISES is a white two unit house that is two stories tall. Apartment A can be located on the left side of the residence at the end of the driveway. Apartment A has a yellow door with a mailbox on the left side

labeled "89A". The door on the left side of the building pictured below is the door, with mailbox labeled "89A".



## PROBABLE CAUSE

5.  In early March 2024, an FBI confidential human source ("CHS-1")[1] identified Danny SUN (DOB XX/XX/1988) as an interstate cocaine and counterfeit pill trafficker that was transporting narcotics from a source in Massachusetts to Maine. CHS-1 identified for law enforcement a Snapchat username "shynemobile" as a method of communication that Sun had used for drug trafficking communication with CHS-1.

---

[1] CHS-1 was cooperating with law enforcement for judicial sentencing consideration in a state of Maine criminal case wherein CHS-1 was charged with aggravated trafficking in scheduled drugs.

6.      Law enforcement agents were able to locate a public Facebook profile displaying the name of "Sun Los". The profile contained multiple photos displayed publicly; after a review of the photographs, law enforcement was able to identify the owner of the page as Danny Sun. Contained on the Facebook page, SUN shared links to an Instagram page for "shynemobiled", and a website for Shyne Mobile Detailing. Both the Instagram page and the website advertised a phone number of 978-201-4526.

7.      Agents identified the phone number as belonging to T-Mobile's network. Legal process was subsequently served on T-Mobile seeking subscriber information and phone records pertaining to 978-201-4526. The returns from T-Mobile indicated the subscriber was "Dan Sun" with a billing address in Tyngsboro, Massachusetts. Agents learned this phone number was associated with a CashApp account "Shyne Mobile Defailers," and legal process was served on the CashApp account. Records revealed the account was owned by Danny Sun, which was corroborated by the inclusion of SUN's Massachusetts license and a photo of Danny Sun in the records.

8.      In the fall of 2024, at the direction of law enforcement, CHS-1 established communication with Snapchat username shynemobile. CHS-1 inquired with shynemobile as to what narcotics shynemobile had available for sale. Snapchat user shynemobile responded to CHS-1 and offered to sell CHS-1 one hundred (100) of "Uros" for $6 each, which shynemobile indicated was "pure mdma". Snapchat user shynemobile also offered to sell one thousand (1,000) "Addys" for $2 each. I am aware from my experience in drug investigations that Adderall, an amphetamine that is a controlled substance, has a common street name of "Addys". Snapchat user shynemobile additionally offered to sell CHS-1 one hundred (100) grams of "masow" for $2,500. CHS-1 explained to law enforcement that "masow" was code for cocaine.

9. In mid-November 2024, CHS-1 made contact with Snapchat user shynemobile to purchase narcotics. Shynemobile indicated to CHS-1 that he has multiple "runners" going as far as New Jersey and can also mail illicit drugs as far away as South Carolina. Shynemobile additionally mentioned that he had ten thousand (10,000) "Addys" on him and that he normally had access to up to six (6) kilograms of cocaine.

10. On November 21, 2024, CHS-1 arranged to purchase $1,500 worth of "Addys" from Snapchat user shynemobile, with the transaction to occur in Kittery, Maine. Prior to departing for the meeting location, CHS-1 and CHS-1's vehicle were searched by agents for contraband, with negative results. CHS-1 was provided with prerecorded funds for the purchase before departing for the meeting location.

11. At the meeting location, agents observed CHS-1 enter the back passenger seat of a Chevrolet Silverado bearing Massachusetts registration plates for a short period, before exiting the Silverado and departing the area. CHS-1 subsequently travelled to a pre-determined meet location with agents, wherein CHS-1 provided agents with a zip lock bag labeled "600" that contained 603 orange pills weighing approximately 220 grams. The orange pills were subsequently submitted for analysis by the Drug Enforcement Administration laboratory, which confirmed the presence of methamphetamine, a Schedule II controlled substance.

12. On December 4, 2024, at the direction of law enforcement, CHS-1 messaged Snapchat user shynemobile and arranged for the purchase of $2,500 worth of "Addys" at a location in South Portland, Maine. Snapchat user shynemobile indicated to CHS-1 that he would send a runner in a Honda Pilot for the meeting. Prior to departing for the meeting location, CHS-1 and CHS-1's vehicle were searched by law enforcement

for contraband, with negative results. Agents provided CHS-1 with pre-recorded funds for the purchase of the narcotics, and CHS-1 departed for the meeting location. Surveillance agents observed a black Honda Pilot bearing Maine registration plates waiting at the meeting location. Agents observed CHS-1 enter the Honda Pilot and could hear the interaction via an audio monitoring device CHS-1 wore while conducting the transaction with the male operator. CHS-1 subsequently exited the vehicle and travelled to a pre-determined location to meet with agents. The black Honda Pilot likewise began to depart the area. CHS-1 provided agents with a ziplock bag containing 1010 orange pills weighing approximately 361 grams. CHS-1 indicated to agents that he had provided the male the money and the male had provided him the ziplock bag. CHS-1 told agents that the male had been the same male with SUN during the controlled purchase in November 2024. The orange pills seized were subsequently submitted for analysis by the Drug Enforcement Administration laboratory, which confirmed the presence of methamphetamine, a Schedule II controlled substance.

      13.    Law enforcement agents had additionally applied for, and were granted, a judicially-authorized federal search warrant of the Snapchat account shynemobile. The federal search warrant was authorized by the Honorable Karen Frink Wolf, U.S. Magistrate Judge, on December 4, 2024.

      14.    Agents executed the search warrant on Snapchat and were provided records of the shynemobile account. During review, agents discovered a partial conversation between shynemobile and a Snapchat user "pb4igo." On June 3, 2024, pb4igo sent a message stating "89a Gill St. Auburn, ME04210 Ron Savay". On June 13, 2024, pb4igo also sent "207-766-6943". Photos of United States Postal Service ("USPS") packing labels/tracking numbers being sent by shynemobile to the Snapchat account of

6

"pb4igo" were additionally located. Agents observed that the packing slips recipient's name and address bore "Ron Savay, 89a Gill St., Auburn, ME 04210".

15. Agents sent legal process to T-Mobile for the 207-766-6943 phone number, with records received indicating the subscriber for the phone number was Touch Rin SVAY ("SVAY"), with the same billing address as the SUBJECT PREMISES. Law enforcement learned that this phone number was connected to a CashApp account of "badpanda". Legal process was served pertaining to records associated with the "badpanda" CashApp account. The received records identified the account owner as SVAY, with the address listed as the SUBJECT PREMISES.

16. A review of SUN's CashApp account revealed payments from SVAY's "badpanda" account: (1) 1,500.00 on July 10, 2024; (2) $1,200.00 on October 21, 2024. In reviewing previously obtained snapchat records of shynemobile, agents noted that the payments occurred on dates corresponding with the photos of packing labels/tracking numbers observed on Snapchat. Agents additionally located three separate payments totaling $2,700.00 sent by badpanda to SUN's CashApp on June 16, 2024: there was a $200 payment with no memo line included; a $1,000 payment indicated for "oranges"; and a $1,500.00 payment with a memo line of "orange". A full review of the CashApp records revealed that SVAY sent SUN a total of $14,270 over the course of 15 payments between November 21, 2023, and December 5, 2024.

17. United States Postal Inspectors, assisting in the FBI's investigation, were able to identify at least four packages that had been delivered by USPS to the address in Auburn, Maine since mid-2024. Three of the packages contained the same return sender and address in Dracut, MA as the photos sent by Snapchat user shynemobile.

18. Postal Inspectors subsequently obtained a judicially-authorized federal search warrant in the District of Maine pertaining to an intercepted parcel destined for the address in Auburn, Maine. The search warrant was authorized by the Honorable Karen Frink Wolf, United States Magistrate Judge, on January 27, 2025. Postal Inspectors noted that the package had been accepted into the U.S. Postal Service for shipping in Tyngsboro, Massachusetts. The federal search warrant was executed on January 30, 2025. A search of the parcel resulted in the seizure of a white powdery substance contained within a small ziplock bag as well as a ziplock bag bearing the number "500" written on it containing orange pills. With packaging the white powdery substance weighed approximately 31 grams and the orange pills, including packaging, weighed approximately 225 grams. A TruNarc analyzer test of the white powder substance resulted in a presumptive positive for cocaine hydrochloride, a Scheduled controlled substance. A TruNarc analyzer test of the orange pills resulted in a presumptive positive for fentanyl compound or methamphetamine, both of which are scheduled controlled substances.

19. Postal Inspectors reviewed USPS records related to the intercepted parcel and noted that T-Mobile phone number 207-766-6943 was signed up to receive tracking notifications for the parcel. On January 31, 2025, an individual identifying themselves as "Rin Savy" called USPS from phone number 207-766-6943 to inquire about the location of the parcel.

20. Based on my training and experience and the training and experience of other law enforcement personnel with whom I have spoken and worked, I know the following:

a. Drug traffickers often store drugs, drug paraphernalia, and drug proceeds in private places, including their residences, surrounding property, and surrounding structures, such as garages, sheds, and similar outdoor shelters, located in close proximity to them and their residences, that are provided or maintained by them or one or more associates, and drug traffickers often use safes or other locked containers within these relatively secure locations to store drugs, drug paraphernalia, drug proceeds, and other evidence of drug trafficking;

b. Drug traffickers often possess and store firearms, ammunition, and other dangerous weapons in their residences, surrounding property, and other surrounding structures where their drugs, drug paraphernalia, and drug proceeds are stored, in order to protect themselves, their supplies of drugs, drug paraphernalia, and their drug proceeds;

c. Drug traffickers often keep, on hand, large quantities of U.S. currency in order to maintain and finance their drug trafficking activities;

d. Drug traffickers often keep books, records, receipts, notes, ledgers, and other papers related to ordering, purchasing, transporting, and distributing drugs in private places where drug traffickers have ready access to them including their residences, other surrounding structures, and other secure locations where drugs and drug proceeds may be stored;

e. Drug traffickers often use cellular telephones and other digital devices and electronic storage media in furtherance of their criminal activities.

## CONCLUSION

21. I submit that this affidavit supports probable cause for a search warrant authorizing a search of SUBJECT PREMISES and SUBJECT PERSON described in Attachments A-1 and A-2 to seek the items described in Attachments B-1 and B-2

Respectfully submitted,

Jason Leadbetter
Task Force Officer
Federal Bureau of Investigation

Sworn to telephonically and signed electronically in accordance with the requirements of Rule 4.1 of the Federal Rules of Criminal Procedures

Date: Mar 04 2025

City and state: Portland, Maine

_Judge's signature_

Karen Frink Wolf, U.S. Magistrate Judge
_Printed name and title_